**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Marcus Chatman, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:20-cv-047 |
| James Sayler, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is a Motion to Dismiss Section 2254 Petition by Respondent on May 18, 2020.  For the reasons that follow, the motion is granted and Petitioner Marcus Chatman's ("Chatman") habeas petition is denied.

## I.    BACKGROUND

### A.    Underlying Criminal Conviction

Chatman was convicted in state district court of the offenses of possession with intent to deliver, possession of cocaine, and possession of marijuana by a driver.  The North Dakota Supreme Court summarized the events culminating his conviction as follows in State v. Chatman:

> [¶ 2] On May 15, 2014, Chatman was arrested on an unrelated charge. After the arrest, Bismarck police officers searched Chatman's cell phone without a warrant and found text messages about drug distribution.

> [¶ 3] On May 20, 2014, an informant began providing information to a Bismarck Police detective in exchange for two one-way bus tickets and to potentially help with her boyfriend's criminal charges. The informant told the detective she was a heroin user, Chatman was her source for heroin, Chatman was known by the street name "D," she had seen Chatman in possession of heroin two days earlier, and he was selling the heroin for $100 for one-tenth of a gram. The informant told the detective she was meeting Chatman later that day. After meeting with Chatman, the informant told the detective that Chatman was leaving for Chicago that night to pick up heroin and cocaine and asked her to accompany him on the trip.

1

[¶ 4] The informant traveled to Chicago with Chatman and kept in contact with the detective during the trip. The detective received a text message from the informant around 11:12 p.m. on May 20, 2014, stating they had left Bismarck to go to Chicago. On the morning of May 21, 2014, the detective received a text message from the informant stating they were in Wisconsin. On May 22, 2014, the detective applied for a warrant for cell tower information for a cell phone belonging to another individual the detective believed was with Chatman and the informant to track their progress. The affidavit submitted in support of the search warrant application included information obtained from the May 15, 2014, warrantless search of Chatman's cell phone. After the detective applied for the warrant for the cell tower information, he received a text message from the informant informing him they were almost to "the cities" and Chatman had the heroin in his jeans pocket.

[¶ 5] The detective applied for a warrant to search Chatman and the vehicle he was driving. The detective testified in support of the application and also submitted a copy of his affidavit from the prior cell phone tower warrant application. A warrant was issued, authorizing a search of Chatman's person and the vehicle he was driving when he arrived in Bismarck.

[¶ 6] Officers set up surveillance along the route they believed Chatman would take to determine when Chatman returned to Bismarck. The detective observed Chatman driving the vehicle on the interstate heading toward Bismarck, he notified other officers, and the officers stopped Chatman's vehicle when it reached his residence. Officers searched Chatman and the vehicle and found heroin, cocaine, and marijuana. Chatman was charged with possession of heroin with intent to deliver or manufacture, a class A felony; possession of cocaine, a class C felony; and possession of marijuana by a driver, a class A misdemeanor.

[¶ 7] Chatman moved to suppress the evidence obtained from searching him and his vehicle. He argued information from the May 15, 2014, warrantless cell phone search was used to obtain the search warrant, a warrant must be obtained to search a cell phone incident to arrest, and therefore all evidence obtained as a result of the illegal search of his cell phone must be suppressed. After a hearing, the district court denied the motion, concluding the Fourth Amendment was not violated by the search of Chatman and the vehicle because there was sufficient evidence to find probable cause to issue the search warrant absent the information obtained from the May 15, 2014, cell phone search.

[¶ 8] Before trial, Chatman requested the trial be reset because he was unable to contact the informant to testify. The district court granted the request and the trial was reset. On the morning of the first day of trial, Chatman informed the court he had subpoenaed the informant, but the person who responded to the subpoena was not the informant involved with his case, and he stated the informant should be present for the case to properly proceed. The State advised the court it did not know where

the informant was. Chatman did not make any further motions or make any further argument about the informant's absence. A jury trial was held, and the jury found Chatman guilty on all three charges.

(Doc. No. 10-13, <u>State v. Chatman</u>, 2015 ND 296, ¶¶ 2-8, 872 N.W.2d 595, 599-600 ("<u>Chatman I</u>")).

## B.    Direct Appeal

Chatman directly appealed his conviction to the North Dakota Supreme Court on the grounds that the trial court had erred in denying his motion to suppress and that his Sixth Amendment rights were violated when testimonial statements of a witness made unavailable by the State were presented and allowed as trial evidence. (Doc. Nos. 10-9, 10-10). The North Dakota Supreme Court affirmed the judgment in an opinion filed on December 22, 2015. (Doc. No. 10-13, <u>State v. Chatman</u>, 2015 ND 296, 872 N.W.2d 595). Its mandate issued on March 1, 2016. (Doc. No. 10-9.) Chatman did not petition the United States Supreme Court for a writ of certiorari.

## C.    State Post-Conviction Proceedings

### 1.    First Application for Post-Conviction Relief

Chatman filed an application for post conviction relief with the state district court on March 28, 2016, claiming ineffective assistance of trial counsel and failures by the State to correct false testimony and to provide him with exculpatory evidence as required by N.D. R. Crim P. 16. (Doc. Nos. 10-14, 10-15). The state district court dismissed his application on June 29, 2016. (Doc. No. 10-18). Its decision was affirmed by the North Dakota Supreme Court on February 16, 2017. (Doc. No. 10-23, <u>Chatman v. State</u>, 2017 ND 12).

Meanwhile, on December 20, 2016, Chatman filed a second application for post-conviction relief with the state district court, challenging the constitutionality of the anticipatory search warrant in his underlying criminal case and further asserting that he was entitled to post-conviction relief due

to new evidence he had discovered regarding both Ashley Giles's use of the alias "Jyssica Noble" and Ashley Giles's whereabouts.   (Doc. Nos.  10-24, 10-25, 10-35). The state district court summarily dismissed the application on October 19, 2017.  (Doc. No. 10-35).  In so doing, it observed the North Dakota Supreme Court had disposed of Chatman's claim regarding the search warrants constitutionally on direct appeal.   (Id.).  As for Chatman's assertion regarding the discovery of new evidence, it concluded that the information was not entirely new and ultimately had little if any consequence.

[¶12] Here, Chatman's "newly discovered" evidence pertains to Giles.  Specifically, Chatman alleges the "newly discovered" evidence includes Giles's alias "Jyssica Noble" and Gile's whereabout, allegedly in Massachusetts.

[¶13] Regarding Gile's whereabouts, on December 14, 2014, Attorney Dietz e-mailed Attorney Ewell informing him that Giles's last known location was Massachusetts.  On January 13, 2015, Attorney Ewell asked for the confidential informant file on Giles.  On January 14, 2015, the State responded indicating that there was no confidential information file on Giles since Giles did not sign up as a confidential informant.  Later on January 14, 2015, Detective Bolme confirmed the States assertion, indicating that there was "no paperwork."   This "newly discovered"evidence was not discovered after trial.  In fact it was disclosed to Attorney Ewell over a month before trial.  Assuming, without finding, that the evidence was not discovered until after trial and that the failure to learn about this evidence at time of trial was not a result of Chatman's lack of diligence, the "newly discovered" evidence is neither material nor likely to result in an acquittal.

[¶14] Regarding Gile's alias, on October 7, 2016, Chatman filed an open records request.  On November 3, 2016, the State provided Chatman with a letter indicating Giles's only known alias to the State or the Bismarck Police Department is "Jyssica Noble."  The State asserts that neither the State nor Detective Bolme was aware of the alias "Jyssica Noble" until July 23, 2015, over four months after Chatman's trial. The failure to learn about this evidence at the time of trial does not appear to be as a result of Chatman's lack of diligence. The "newly discovered" evidence, however, is neither material nor likely to result in an acquittal . . . .

* * *

[¶18] Here, the State has provided evidence that as of October 16, 2014 they believed Gile's address to be in Fargo, North Dakota.  However, in an e-mail

> conversation between Attorney Dietz and Attorney Ewell on December 14, 2014, Attorney Dietz disclosed that she believed Giles's last known location to be in Massachusetts. Even if the court were to determine that the State committed a Rule 16 violation by failing to disclose Giles location in Massachusetts until December 14, 2014, Chatman has nonetheless failed to show he was significantly prejudiced by the violation. Therefore , Chatman is not entitled to relief on this basis.

(Id.). Its decision was affirmed by the North Dakota Supreme Court on March 22, 2018. (Doc. No. 10-40, Chatman v. State, 2018 ND 77).

Chatman filed a third application for post-conviction relief with the state district court on July 20, 2018, claiming, among other things, that he had obtained new evidence, that the search warrant for his vehicle was invalid, that his confession was involuntary, that the State had tampered with a witness, and that his trial counsel was ineffective. (Doc. Nos. 10-41, 10-42; Doc. No 10-55, Chatman v. State, 2020 ND 1). He also filed a Rule 60(b) motion.

On motion by the State, the state district court summarily dismissed Chatman's third application on October 1, 2018, on the ground that the issues raised by Chapman were or could have been raised in an earlier petition. (Doc. No. 10-46). Chatman appealed. On February 11, 2019, the North Dakota Supreme Court issued an order temporarily remanding the case back to the state district court for the limited purpose of addressing Chatman's Rule 60 motion. (Doc. No. 10-47).

On April 10, 2019, the state district court denied Chatman's Rule 60(b) motion. (Doc. No. 7-50). On January 23, 2020, the North Dakota Supreme Court summarily affirmed the state district court's summary dismissal of Chatman's third application for post-conviction relief and denial of Chatman's Rule 60 motion, opining:

> The district court did not err by summarily denying Chatman's application for post-conviction relief. Chatman's claims were barred by res judicata. *See also Chatman*, 2018 ND 77, ¶ 9, 908 N.W.2d 724 (considering Chatman's videotaped confession to the charges and the lack of an affidavit or other evidence from the witness to establish the substance of her testimony, an evidentiary hearing is not

required). The court did not err in denying his motion for relief under N.D. R. Civ. P. 60, and his motion for reconsideration. *See State v. Atkins*, 2019 ND 145, ¶¶ 10-11, 928 N.W.2d 441 (stating the Uniform Postconviction Procedure Act is to be used exclusively to challenge a judgment of conviction, and regardless of the title on a motion it will be treated as a subsequent application for post-conviction relief). We summarily affirm under N.D. R .App. P. 35.1(a)(6),(7).

(Doc. No. 10-55, <u>Chatman v. State</u>, 2020, ND 1, ¶ 3).

## D.    Federal Habeas Petition

Chatman filed a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" with this court on March 23, 2020.   (Doc. No. 1).  He asserts the following grounds for relief:

GROUND ONE: Ineffective Assistance of Counsel

\* \* \*

GROUND TWO (A): Fourth Amendment Violation/Illegal Search and Seizures

\* \* \*

GROUND TWO (B): Fourth Amendment violation/Illegal Search and Seizures

\* \* \*

GROUND THREE: (Sixth Amendment Violations) Confrontation Clause/Compulsory Process Rights

\* \* \*

GROUND FOUR: Fifth and Fourteen [sic] Amendment/Miranda Violation

\* \* \*

GROUND FIVE: Tampering with a witness, victim or an informant/Obstruct the Administration of Justice. 18 U.S.C.S. 1512(b)(1)(A)(C)(D)

\* \* \*

GROUND SIX: Brady Violation/Newly Discovered Evidence/Prosecution's failure to disclose evidence favorable to the defense violated Brady and rendered Chatman's trial fundamentally unfair.

GROUND SEVEN: Prosecutorial Misconduct/Due Process of the Fourteenth Amendment/Naupe Claim/Gioglio Claim. Chatman conviction violated due process since police officer "knowingly" gave material false testimony at trial; prosecutor's

6

allowing the false testimony to go "uncorrected" was a violation of defendant's due process rights.

(Id.).

### E.      Motion to Dismiss

On September 5, 2018,  Respondent filed a motion to dismiss Chatman's petition.  (Doc. No. 5).  He asserts that Chatman's petition is time-barred and that the claims it contains are otherwise subject to dismissal for procedural or substantive reasons.  His motion has now been fully briefed and is ripe for the court's consideration.

## II.   DISCUSSION

### A.      Timeliness of Chatman's Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year period of limitation for filing a habeas corpus petition. 28 U.S.C. § 2244(d)(1).  As relevant here, this limitations period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. 2244(d)(1)(A).  However, the limitations period may be  tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2244(d)(2). What constitutes a "properly filed application" is undefined.

North Dakota's post-conviction statute establishes a two-year limitations period for filing an application for post-conviction relief. See N.D.C.C. § 29-32-1(2). Similar to AEDPA, it provides that the limitations period commences when judgment becomes final at the conclusion of direct review or the expiration of the time for seeking direct review. See id.  It further provides that, notwithstanding the two year limitations period, courts can still consider applications alleging the

existence of newly discovered evidence so long as it is filed within two years of the date the petitioner discovered or should have reasonably discovered this new evidence. See N.D.C.C. § 29-32-1(3).

Chatman's conviction was final for purposes of AEDPA and the North Dakota post-conviction statute on or about March 21, 2016, and the limitations for filing a § 2254 petition and a state application began to accrue. As noted above, Chatman filed the first of three applications for post-conviction relief on March 28, 2016, effectively tolling the limitations period. While his first application was still winding its way through the state courts, he filed a second application. Final judgment was entered on the first application on February 16, 2017. Final judgment was entered on the second application on March 22, 2018. Approximately four months later, on July 20, 2018, he filed a third application for post conviction relief.

Respondent takes the position that Chatman's third application was not properly filed for purposes of AEDPA and that the limitations period was not tolled during its pendency, which would mean that the limitations period expired well before Chatman filed his habeas petition with this court. More specifically Respondent asserts that Chatman's third application, which was dismissed as res judicata by the state courts, is akin to an untimely filed application, which is not considered properly filed under AEDPA and does not toll AEDPA's limitations period during its pendency. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (holding that a petition for state post-conviction relief rejected as untimely by the Alabama courts was not "properly filed" under § 2244(d)(2) and does not entitle a petitioner to statutory tolling under § 2244(d)(2)); see also Allen v. Siebert, 552 U.S. 3, 4-5 (2007) (same). Because of this, Respondent asserts that this court can dismiss Chatman's habeas petition as time-barred. Alternatively, Respondent asserts that the state courts could have

dismissed Chatman's third application as untimely as it was filed more than two years after his judgment of conviction became final and that this court can therefore conclude that this application was not properly filed for purposes of § 2244(d)(2).  See Allen v. Siebert, 552 U.S. 3, 7 (2007) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

The court appreciates Respondent's frustration with what he perceives as Chatman's effort to circumvent the States statute's of limitations by filing a third application premised in part on his alleged discovery of new evidence.  It nevertheless concludes that Chatman's third application was properly filed for purposes of § 2244(d)(2).

A State post-conviction application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz, 531 U.S. at 8; see also Beery v. Ault, 312 F.3d 948, 950–951 (8th Cir. 2002) ("A properly filed application is one that meets all of the state's procedural requirements.").  These procedural laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8. Such requirements are often "conditions to filing," as opposed to requirements such as procedural bars that are "conditions to obtaining relief."  Id. at 10 ("[I]n common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.").

Here, State statute makes it clear that res judicata is not a condition for filing an application for post-conviction relief but rather an affirmative defense to be pleaded by the State.  See N.D.C.C. 29-32.1-12(1) ("An application for postconviction relief may be denied on the ground that the same

claim or claims were fully and finally determined in a previous proceeding."); N.D.C.C. 29-31.12(3) ("Res judicata . . . [is an] affirmative defense[ ] to be pleaded by the state. The burden of proof is also upon the state, but, as to any ground for relief which, by statute or rule of court, must be presented as a defense or objection at a specified stage of a criminal prosecution, the applicant shall show good cause for noncompliance with the statute or rule.").  Consequently, res judica is not, in this instance, the type of procedural bar that would prevent an application from being "properly filed" for purposes of § 2244(d)(2). See Artuz, 531 U.S. at 81; see also Habteselassie v. Novak, 209 F.3d 1208, 1210–11 (10th Cir. 2000) (distinguishing pure filing requirements from affirmative defenses such as res judicta, which "require analysis in some manner of the substance of the claims set forth by the petitioner," when considering whether an application has been properly filed); Lovasz v. Vaughn, 134 F.3d 146, 148-49 (3d Cir. 1998) ("[I]n considering whether a petition for post-conviction relief is properly filed, district courts should not inquire into its merits" but rather focus on "the state's procedural requires, such as the rules governing the time and place of filing."); but see Rouse v. Iowa, 110 F. Supp. 2d 1117, 1144 (N.D. Ia. 2000) (finding that an application dismissed pursuant to the doctrine of res judicata as codified by state statute was not properly filed for purposes of § 2244(d)(2)).

As for Respondent's assertion that Chatman's third application cannot be considered properly filed for purposes of 2245(d)(2) because it could have been dismissed by the State courts as untimely, the court does not find it persuasive.  First, Respondent's assertion is conclusory. Second, Respondent has cited no authority for the proposition that, when determining whether Chatman's application was properly filed, this court can consider reasons other than those given by state courts when dismissing the application.  See Henderson v. Bunting, 698 F. App'x 244, 247 (6th

Cir. 2017) (focusing on what the state courts did as opposed to what they could have done when determining that a petitioner's multiple motions to vacate were timely filed for purposes of 2244(d)(2)).

Because Chatman's third application was properly filed for purposes of § 2244(d)(2), the limitations period was tolled during its pendency.  This means that the instant petition is not time-barred and the court can move on to consider the grounds for relief being asserted by Chatman.

### B.     Grounds for Relief

### 1.      Claim Re Ineffective Assistance of Counsel

Chatman's first claim is for ineffective assistance of counsel.  The essence of this claim is that counsel failed to locate and call Jyssica Noble, a material witness whose testimony would, according to Chatman, have supported his version of the facts.

Respondent first asserts that the state courts application of the law to the facts was objectively reasonable and that their findings are entitled to great deference.  Second, he asserts that Chatman cannot make the requisite showing of prejudice required to sustain his claim given, among other things,  his videotaped admission to committing the crimes for which he was charged and convicted.  Having reviewed the record, the court agrees.

Under  Strickland v. Washington, 466 U.S. 668 (1984), a defendant who claims ineffectiveness of counsel must demonstrate not only that his attorney's performance was deficient, but also that he was prejudiced by this deficiency. In regard to this two-pronged analysis, the Court explained in Strickland that:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining

the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id. at 697.

The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374, 380 (2005). When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and was not ineffective assistance. See Bell v. Cone, 535 U.S. 685, 698–702 (2002). The same holds true in judging trial counsel's performance with respect to claims of inadequate investigation. Rompilla, 545 U.S. 374, 380.

Under the "second Strickland prong," prejudice is only shown when there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" E.g., Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (quoting Strickland, 466 U.S. at 694 and adding emphasis). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland test, a federal court must afford the state court's determination the deference required by 28 U.S.C. § 2254(d).  Rompilla, 545 U.S. at 380.  Assuming there are no issues with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford, 537 U.S. at 25; see also Rompilla, 545 U.S. at 380. The Supreme Court has characterized the application of the Strickland standard through the prism of AEDPA as amounting to a "doubly deferential"

standard of review. E.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Chatman asserted his claim for ineffective assistance of counsel in his first application for post-conviction relief.   Focusing on the second Strickland prong, the state district concluded that he had failed to demonstrate that he had been prejudiced by his trial counsel's performance.

> In the present case, Chatman, has not satisfied the Strickland test.  Even assuming that trial counsel's assistance fell below the objective standard of reasonableness, Chatman has not established the probable different result in light of the remaining properly presented evidence.  Even absent the testimony containing the information obtained from an informant, "[t]here was sufficient evidence of Chatman's guilt, including the heroin and cocaine found in the vehicle and the marijuana found on Chatman's person." *State v. Chatman*, 2015 ND 296, ¶ 30, 872 N.W.2d 595.  Moreover, '[t]he detective and other officers testified Chatman was driving the vehicle when it was stopped.  Evidence established 19.77 grams of heroin were seized . . ." *Id.*  Additionally, "[t]he detective testified about his interview of Chatman after the arrest, Chatman admitted the heroin and cocaine in the vehicle were his, and Chatman stated he was planning to sell the heroin," *Id.*  "A video of the interview was admitted into evidence and played for the jury." *Id.*
>
> Chatman has not shown and will be unable to show how absent counsel's deficient performance the result of the proceedings would have been different.

(Doc. No. 10-18).  The North Dakota Supreme Court agreed with the district court's assessment, concluding that "Chatman failed to provide competent admissible evidence by affidavit or other comparable means raising a factual dispute that he was prejudiced by trial counsel's claimed deficient performance."  (Doc. No. 10-23).

Having reviewed the record, this court finds that the state courts' application of Strickland was objectively reasonable and therefore entitled to great deference.  Consequently, it shall deny Chatman's claim for ineffective assistance of counsel.

## 2.      Claim Re Illegal Search and Seizure

Chatman's second claim is that the anticipatory search warrant was invalid and that the trial court erred when denying his request to suppress evidence obtained during execution of it.

The contested anticipatory search warrant was issued on May 22, 2014, while Chatman was en route from Chicago to North Dakota.  It was executed upon Chatman's return to and arrival in North Dakota.  To establish probable cause for the warrant's issuance, law enforcement officers relied on, among other things, text messages they had obtained during an earlier warrantless search of Chatman's cell phone incident to Chatman's arrest, information provided by an informant, Ashley Giles, regarding Chatman's activities and movements, and location information obtained it in connection with a tracking warrant for a cell phone belonging to the owner of the vehicle in which Chatman was traveling.  This information was presented to the state district court in both an affidavit and oral testimony from Detective Bolme.  (Doc. No. 10-5 at pp. 11-12; Doc. No. 10-6 at p. 3).

Chatman moved to suppress evidence obtained during the execution of the anticipatory search warrant, asserting that the warrant was invalid because it was based at least in part on illegally seized text messages from his phone.  (Doc. Nos. 10-5, 10-6).  Following a suppression hearing, the trial court issued an order denying Chatman's motion, finding that, Chatman's text messages aside, law enforcement had presented other information was more than sufficient to support a finding of probable cause of the warrant's issuance.   (Doc. No. 10-6).

On direct appeal, the North Dakota Supreme Court affirmed the trial court's decision that there was sufficient evidence without the text messages to establish probable cause for the anticipatory search warrant.

> [¶17] An affidavit in support of the warrant to search Chatman and his vehicle included information that officers searched Chatman's cell phone incident to his arrest on May 15, 2014, and found "a text which explained that his source was in the Chicago area." The detective also testified in support of the warrant, informing the court that officers had recently seized a cell phone from Chatman and found text messages indicative of drug trafficking. This was the only information obtained from the search of the cell phone that was used to establish probable cause for the search warrant for Chatman's person and the vehicle.

14

[¶18] When the information related to the cell phone search is excised from the affidavit and testimony, sufficient evidence remains to establish probable cause to issue the search warrant. The detective's affidavit stated he had received multiple tips that a black male known as "D" was distributing heroin in the Bismarck area, "D" makes drug runs between Bismarck and Chicago to bring back large quantities of cocaine and heroin, the tips from these informants were consistent, and he was able to confirm through multiple informants that "D" is Chatman and Chatman is from Illinois. The affidavit and the detective's testimony also included information from the informant. The informant told the detective she saw Chatman with five grams of heroin on May 18, 2014, Chatman was selling the heroin for $100 a "point," a point is approximately one-tenth of a gram of heroin and is a quantity consistent with one hit or dosage unit, and Chatman was her main source for heroin. The informant met with Chatman on May 20, 2014, and she told the detective that Chatman asked her to travel with him to Chicago to pick up a load of heroin, she said the trip would be quick, and Chatman wanted her to come on the trip as an extra driver because he planned to pick up the heroin and immediately drive back to Bismarck. There was also evidence the detective received text messages from the informant during the trip advising him of their location, their approximate time of arrival in Bismarck, and where Chatman was holding some of the drugs. The detective testified the informant described the vehicle they were traveling in as a 2008 red Pontiac G6 registered to Chatman's girlfriend.

[¶19] The detective's information from the informant and others was unrelated to the information obtained from the search of Chatman's cell phone. Individuals who are involved in criminal activity or who enjoy the confidence of criminals are members of the criminal milieu, and their reliability or credibility must be established. *Myers v. State*, 2009 ND 13, ¶ 18, 760 N.W.2d 362. "Reliability of an informant can be established in numerous ways, such as corroboration through independent investigation, by the affiant's vouching or assertion that the informant is reliable, or by the informant giving detailed information overcoming any doubt." *State v. Weinmann*, 2015 ND 213, ¶ 8, 868 N.W.2d 828 (quoting *State v. Lunde*, 2008 ND 142, ¶ 11, 752 N.W.2d 630). The informant provided a first-hand account of recently witnessing Chatman dealing heroin and of her trip with Chatman to Chicago to pick up heroin and cocaine, including detailed information about when Chatman would arrive with the drugs, what vehicle they were driving, and where they were located. The informant's level of specificity made it more likely that the information was reliable and that she was credible. *See State v. Holzer*, 2003 ND 19, ¶ 14, 656 N.W.2d 686 (holding informant's level of specificity in describing drug activity made it more likely the information he provided was accurate). The informant's information was consistent with the information from the other informants.

[¶20] Under these facts and circumstances a person of reasonable caution would believe the contraband or evidence sought probably would be found in the vehicle Chatman was driving and on his person. After excising the tainted information and

considering the totality of the circumstances, we conclude probable cause existed to
issue the search warrant.

Chatman I, at ¶¶ 17-20.  It then went on to address as follows an argument asserted by Chatman for

the first time on appeal, that an anticipatory search warrants issued by a state court is categorically

unconstitutional.

> [¶23] In *United States v. Grubbs*, 547 U.S. 90, 96 (2006), the United States Supreme
> Court held anticipatory search warrants are not categorically unconstitutional under
> the Fourth Amendment. The Court stated, "[W]hen an anticipatory warrant is issued,
> 'the fact that the contraband is not presently located at the place described in the
> warrant is immaterial, so long as there is probable cause to believe that it will be
> there when the search warrant is executed.'" Id. (quoting *United States v. Garcia*,
> 882 F.2d 699, 702 (2d Cir. 1989)). The Court held anticipatory warrants are not any
> different in principle from ordinary warrants, and they require the magistrate to
> determine "(1) that it is now probable that (2) contraband, evidence of a crime, or a
> fugitive will be on the described premises (3) when the warrant is executed." *Grubbs*,
> at 96. The Court further held two prerequisites of probability must be satisfied for
> a conditioned anticipatory warrant to comply with the Fourth Amendment: "[i]t must
> be true not only that if the triggering condition occurs there is a fair probability that
> contraband or evidence of a crime will be found in a particular place, but also that
> there is probable cause to believe the triggering condition will occur." *Id.* at 96-97
> (internal quotation marks and citation omitted).
>
> [¶24] The district court judge or magistrate decides whether probable cause exists
> when issuing a warrant, and the issue of whether probable cause exists is not left to
> the officer's discretion. Anticipatory warrants do not per se violate the Fourth
> Amendment. Under *Grubbs*, the anticipatory warrant in this case does not violate the
> Fourth Amendment because it was probable at the time the warrant was issued that
> evidence of a crime would be on Chatman's person or in the vehicle when the
> warrant was executed.

Id. at ¶¶ 23-24.

In the petition filed with this court, Chatman asserts the warrant is invalid as the state district

court lacked explicit authorization under statute or N.D. Rule Crim. P. 41(a) to issue such a warrant.

He further asserts that to the extent the issuing court may have relied on Fed. R. Crim. P. 41, it is

inapplicable.  Finally, he appears to assert that the warrant is otherwise invalid because it: was issued

16

while he was out-of-state and before had actually engaged in any alleged criminal conduct in the State of North Dakota; and was executed by local law enforcement as opposed to federal agents.

Chatman's assertion that state courts cannot issue anticipatory search warrant is frivolous as is his assertion that the anticipatory search warrant was invalid by virtue of the fact that it was not executed by federal agents.

As a preliminary matter, it should be noted that the anticipating search warrant was state as opposed to federal in character. See e.g., United States v. Golson, 743 F.3d 44, 53 (3d Cir. 2014) (discussing factors for the court to consider when ascertaining whether a search is "federal" or "state" in character). The warrant was issued by a state district court judge upon application by local enforcement, was based upon information obtained by local enforcement, concerned a violation of state law, and was executed by local law enforcement. The products of the search were placed in the custody of local law enforcement and formed the basis of the State's prosecution. Consequently, Chatman is correct in that Fed. R. Crim. P. 41 has absolutely no application here.

Insofar as Chatman asserts the state district court judge who issued the anticipatory search warrant lacked the authority to do so, he cites no authority for this proposition. Moreover, it is worth mentioning that, in denying his motion to suppress and later when affirming his conviction, the state courts implicitly recognized that under state law a state district court  judge has the authority to issue such a warrant provided that it is supported by probable cause. The state courts then went on find that the warrant was valid and that the evidence seized during its execution was admissible at trial.

In any event, Chatman's challenge to the validity of the anticipatory search warrant and the admission at trial of evidence obtained during the execution of it is otherwise barred by Stone. In

Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482. Under the Court's holding in Stone, a state court's disposition of a Fourth Amendment claim is barred from federal habeas review unless: (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim;" or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process" under Willett. Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007).

Here, the record reflects that Chatman was afforded an opportunity to present his Fourth Amendment claim prior to trial and to later revisit this claim on direct appeal and in his subsequent applications for post-conviction relief. The North Dakota Supreme Court extensively addressed the issues of evidence suppression and the warrant's validity. Consequently, there is no basis for application of one of the exceptions to the bar raised by Stone v. Powell to federal habeas consideration of this claim.

In sum, Chatman's dissatisfaction with the state courts' rulings regarding the anticipatory search warrant's validity does not constitute the basis for a reviewable claim. Chatman's claim regarding the validity of the anticipatory search warrant and the admissibility of evidence seized during the execution of the anticipatory search warrant is therefore denied.

### 3.      Claim Re Confrontation Clause/Compulsory Process

Chatman's third claim is that his Sixth Amendment rights of confrontation and compulsory process were violated.  Chatman asserts that Detective Bolmes' informant, Ashley Giles, was not present at trial and that Detective Bolme was permitted to testify about the information Giles had provided to him over Chatman's hearsay objections in violation of his right to confront witnesses against him.  Chatman further asserts that law enforcement was responsible for Giles unavailability as they gave Giles a one-way bus ticket out of town to ensure that she was not around to testify at trial.  At this point, it is worth mentioning that, throughout his petition, Chatman asserts  Ashley Giles was an alias or identity stolen and used by Jyssica Noble, the witness he faulted his attorney for failing to call in his first ground for relief.

Respondent asserts that the admission of statements attributable to Giles did not demonstrably prejudice Chatman as there was a plethora of other evidence of Chatman's guilt that was presented at trial, i.e., the heroin and cocaine found in the vehicle, the marijuana found on Chatman's person, and Chatman's recorded confession.

### a.      Confrontation

Detective Bolme testified at trial that Giles had confirmed to him that she had a heroin source in Bismarck, that she told him she would be taking a trip with Chatman, and she contacted him during the trip and gave him information about her and Chatman's location and said Chatman was driving.  Chatman asserts that the court erred when permitting Detective Bolme to so testify because he never had the opportunity to cross-examine Giles and because Giles unavailability at trial could perhaps be attributed to the actions taken by law enforcement.

The North Dakota Supreme Court denied Chatman's Confrontation Clause claim on direct

appeal, finding that the trial court had not committed obvious error by admitting Bolme's alleged

improper testimony.

[¶27]  Chatman claims his Sixth Amendment right to confront witnesses against him was violated because the informant was not present at trial and the detective was allowed to testify about information she provided the detective over Chatman's hearsay objections. Because Chatman did not claim at trial the admission of the testimony violated his right to confront witnesses against him, our review of the issue is limited to obvious error.

[¶28]  Under the confrontation clause of the Sixth Amendment of the United States Constitution, a criminal defendant has a right to be confronted with the witnesses against him. In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the United States Supreme Court held the confrontation clause prohibits the admission of testimonial hearsay against a defendant, unless the declarant is unavailable to testify and the defendant previously had an opportunity to cross-examine the declarant or the defendant is responsible for the unavailability of the witness.

[¶29]  Chatman argues the district court erred in allowing the State to present testimony from the detective about the informant's testimonial statements. Most of the testimony Chatman argues violated his constitutional rights was not improperly admitted. The district court sustained some of Chatman's objections to the detective's testimony. Some of the alleged improper testimony was elicited in response to Chatman's questions during cross-examination. When a defendant invites error, the error is not reversible.  *See State v. Hill*, 1999 ND 26, ¶ 21, 590 N.W.2d 187; *see also* N.D.C.C. § 31-11-05; *State v. Cone*, 2014 ND 130, ¶ 17, 847 N.W.2d 761. The detective's testimony about statements Chatman made during an interview was not hearsay or testimonial statements from a witness unavailable to testify. See *State v. Strutz*, 2000 ND 22, ¶ 17, 606 N.W.2d 886 (officer's testimony about defendant's statements to the officer was not hearsay); N.D.R.Ev. 801(d)(2). Other statements Chatman alleged were improperly admitted were made during the suppression hearing, and this Court has held the Sixth Amendment confrontation right is a trial right, which does not apply at pretrial suppression hearings. *State v. Woinarowicz*, 2006 ND 179, ¶ 11, 720 N.W.2d 635.

[¶30] At trial, the detective was allowed to testify the informant confirmed she had a heroin source in Bismarck, she told him she would be taking a trip with Chatman, and she contacted the detective during the trip and gave him information about their location and said Chatman was driving. Although these statements may be testimonial and Chatman did not have an opportunity to cross-examine the informant, Chatman failed to demonstrate how the alleged error in admitting those statements affected his substantial rights. For an error to affect a defendant's substantial rights, it must be prejudicial or affect the outcome of the proceeding.

*Patterson*, 2014 ND 193, ¶ 4, 855 N.W.2d 113. Chatman was charged with possession of heroin with an intent to manufacture or deliver, possession of cocaine, and possession of marijuana while operating a motor vehicle. There was sufficient evidence of Chatman's guilt, including the heroin and cocaine found in the vehicle and the marijuana found on Chatman's person. The detective and other officers testified Chatman was driving the vehicle when it was stopped. Evidence established 19.77 grams of heroin were seized, which was over 190 dosages of heroin. The detective testified about his interview of Chatman after the arrest, Chatman admitted the heroin and cocaine in the vehicle were his, and Chatman stated he was planning to sell the heroin. A video of the interview was admitted into evidence and played for the jury. Chatman has not shown that any error in admitting the detective's testimony about the informant's statements was prejudicial or affected the outcome of the trial. We conclude the district court did not commit obvious error by admitting the alleged improper testimony.

Chatman I, at ¶¶27-30).

The Confrontation Clause of the Sixth Amendment guarantees an accused the right to confront and cross-examine the witnesses against him. This right of confrontation prohibits the admission of testimonial out-of-court statements unless (1) the declarant is unavailable to testify and (2) the accused had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 68 (2004). Testimonial statements are those that are made for purposes of investigation or prosecution, such as the following: (1) statements made in prior testimony; (2) "[s]tatements taken by police officers in the course of interrogations"; (3) "formalized" statements, e.g., affidavits, depositions, and confessions; (4) "pretrial statements that declarants would reasonably expect to be used prosecutorially"; and (5) "statements that were made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." Id. at 51-52 (internal quotation marks omitted).

As the North Dakota Supreme Court chose to bypass the merits of the Chatman's confrontation clause claim and instead rely on what amounts to a harmless error analysis, this court reviews the decision under the deferential review standard of 28 U.S.C. § 2254.

21

Confrontation Clause claims are susceptible to harmless error review, and the Court of Appeals identified the correct standard for review of claims on direct appeal that was established in Chapman v. California, 386 U.S. 18, 24 (1993). A different standard of review is applicable to review of claims on collateral review—from Brecht v. Abrahamson, 507 U.S. 619 (1993)—that the federal court cannot grant a writ of habeas corpus unless it has "grave doubt about whether a trial error of federal law 'had substantial and injurious effect or influence in determining the jury's verdict.' " O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

Under § 2254, a federal district court must accord deference to a state court's Chapman harmless error determination. See Mitchell v. Esparza, 540 U.S. 12, 18 (2003). However, in Fry v. Pliler, 551 U.S. 112, 121-22 (2007), the United States Supreme Court held that "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in Chapman. Id. at 121-22. In a practical sense, because Brecht "obviously subsumes" the AEDPA/Chapman test, the Supreme Court has observed that "it certainly makes no sense to require formal application of both tests." Id. at 120.

The harmless error rule arises from the principle that a defendant is entitled to a fair trial, but not a perfect one. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Harmless error analysis is does not apply to all errors, but applies to Confrontation Clause errors. Under the Brecht harmlessness analysis, "if a judge is in grave doubt" about the effect of the error on the jury, the error is not harmless, and petitioner must prevail. O'Neal v. McAninch, 513 U.S. 432, 438-39 (1995). Grave doubt "means that, in the judge's mind, the matter is so evenly balanced that he feels

himself in virtual equipoise as to the harmlessness of the error." Id. at 435.

Factors to consider regarding errors in witness testimony include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684.

Overall, the strength of the prosecution's case as to causation was strong. Aside from the statements attributed to Giles, there was other substantial evidence of Chatman's guilt that was presented at trial, i.e., the heroin and cocaine found in the vehicle, the marijuana found on Chatman's person, and Chatman's recorded confession. The court concludes that the Van Arsdall factors weigh in favor of harmlessness. It agrees that Chatman was not prejudiced primarily because he admitted to the offense conduct and that there was other corroborative physical evidence recovered. Detective Bolmes's testimony regarding Giles statemetns had no substantial and injurious effect or influence in determining the jury's verdict. The result is the same under either Chapman or Brecht—the Court is confident that no harmful error of any magnitude occurred.  Chapman's claiming regarding his inability to confront Giles is therefore denied.

### b.    Compulsory Process

The Eighth Circuit has said the following with respect an accused's right to compulsory process:

> The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall enjoy the right to ... have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The right to compulsory process is not absolute. Both the Sixth Amendment compulsory process and the Fifth Amendment due process clauses require that a defendant show that the witness "testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S.

23

858, 867, 872, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Material testimony is testimony that might affect the outcome of the trial. See id. at 868, 102 S.Ct. 3440.

United States v. Luvene, 245 F.3d 651, 654 (8th Cir. 2001). The burden rests with the party complaining of the compulsory process violation to show how the sought testimony would be both material and favorable to their case. Id.

Neither Chatman's habeas petition nor his brief in opposition to Respondent's motion to dismiss provide any cogent argument as to how Giles's testimony would have been material and favorable to the defense. Rather, Chatman has provided little more than speculation as to what Giles/Nobles would testify. Consequently, he has not come close to carrying his burden of showing how the testimony he sought would have changed the outcome of his trial, as is necessary for him to make a claim for violation of compulsory process. Luvene, 245 F.3d at 654. For that reason, Chatman's claim regarding compulsory process is denied.

### 4.      Claim Re Fifth and Fourteenth Amendment/Miranda Violation

Chatman's fourth claim is that the trial court erred by admitting his confession into evidence at trial because law enforcement officers failed to advise him of his Miranda rights when interrogating him and coerced him into confessing.

Respondent asserts that Chatman failed to fully exhaust his state court remedies with respect to this claim and is now barred from doing so by the doctrine of procedural default. In so doing, he emphasizes that Chatman did not move to suppress his confession, that he did not otherwise request a "voluntariness hearing." Alternatively, he asserts that Chatman's assertion lacks merit as Chatman was advised his Miranda rights after being taken into custody and prior to being interviewed by law enforcement. For support, he cites Detective Bolme's testimony at trial that: (1) Detective Bolme advised Chatman of his Miranda rights after stopping his vehicle and executing the anticipatory

24

search warrant; and (2) Chatman thereafter acknowledged that there were narcotics in the vehicle and voluntarily submitted to the interview at which he admitted to the offense conduct.

Having reviewed the record it is apparent that Chatman claim was denied on adequate and independent states grounds that precludes this court's consideration of it.

The exhaustion requirement codified at 28 U.S.C. § 2254(b)-(c) precludes granting habeas relief for claims that have not been properly exhausted in the state courts. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components. First, the claim must be "fairly presented," which requires that the petitioner present both the factual and legal premises for the claim, with the latter being satisfied if there is a reference to the particular federal constitutional right or a citation to a state or federal case that raises the constitutional issue. Dansby v. Norris, 682 F.3d 711, 722-23 (8th Cir. 2012), vacated on other grounds, Dansby v. Hobbs, No. 12-8582, 2013 WL 506561 (U.S. June 3, 2013); Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007). Second, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

An important corollary to the exhaustion requirement is the doctrine of procedural default. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017). This doctrine holds that "federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Id.; Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) (noting that the bar on consideration of procedurally-defaulted claims is nearly absolute). A state procedural rule is considered independent and adequate if it is firmly established, readily ascertainable, and regularly followed. Barnett v. Roper, 541 F.3d 804,

808 (8th Cir. 2008) (adding that the rule must also further a legitimate state interest and not be applied in an exorbitant manner). Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007).

"[F]ederal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1733 (2022) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)); Dretke v. Haley, 541 U.S. 386, 392-93 (2004); Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012. "To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1733 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that 'the errors at ... trial created a possibility of prejudice,' but rather that the constitutional violation 'worked to his actual and substantial disadvantage.' " Id. at 494, 106 S.Ct. 2639 (quoting Murray, 477 U.S. at 494).

Chatman first asserted a claim regarding the involuntariness of his confession in his third application for post conviction relief. On motion by the state, finding that Chatman could have raised this claim on appeal or in his earlier applications for post-conviction reliefs, the state district court dismissed this claim on the basis of misuse of process under N.D.C.C. § 29-32.1-12. Thus, the state district court in effect concluded that this claim had been for all intents and purposes procedurally defaulted.

North Dakota's rule regarding procedural default is firmly established, readily ascertainable, and regularly enforced. See e.g., Laib v. State, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845; Clark v. State, 1999 ND 78, ¶ 18, 593 N.W.2d 329; Eagleman v. State, 2016 ND 54, 877 N.W.2d 1; Tweed v. State, 2011 ND 228, ¶ 12, 807 N.W.2d 599; Steen v. State, 2007 ND 123, ¶¶ 13-17, 736 N.W.2d

457. Notably, Chatman has presented nothing of substance to establish cause for his default; he has not demonstrated, let alone asserted, that there was some objective external factor or obstacle to prevent him from asserting this claim either on direct appeal or in his first two applications for postconviction relief.  As it is clear that the dismissal of Chatman's claim was predicated upon an adequate and independent state procedural rule, this court is precluded from considering it. Chatman's claim regarding <u>Miranda</u>, the voluntariness of his confession,  and the admission of his confession at trial is therefore denied.

### 5.        Claim Re Witness Tampering/Obstruction of Justice

Chatman's fifth claim is for alleged witness tampering and/or obstruction of justice. Specifically, Chatman claims that law enforcement officers intimidated some witnesses, took steps to ensure that Ashley Giles/Jyssica Noble was unavailable to testify, failed to adequately vet Giles/Noble, and endeavored to conceal the true identity as well as the "identity theft" perpetrated by Giles/Noble.  This claim dovetails or overlaps to a degree with his six and seventh grounds for relief, which will be later discussed in greater.

Respondent asserts that this claim should be dismissed as it based upon nothing more than rank speculation.  It emphasizes that Chatman has provided no statements from Giles/Nobles or other evidence to either establish the substance of her testimony or to otherwise substantiate his claims of witness intimidation or tampering.

"Habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." <u>Cummings v. Evans</u>, 161 F.3d 610, 618 (10th Cir.1998) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642–48 (1974)).  Chatman has failed to produce credible evidence showing the alleged misconduct occurred.  Further, he has failed

to otherwise demonstrate that the alleged misconduct so infected his trial with unfairness as to make the resulting conviction a denial of due process.

In disposing of his first and second applications for post conviction relief, the state courts found that Chatman had not presented any evidence that Giles's/Noble's testimony would have been favorable or material to his defense or otherwise establish that he did not engage in the criminal conduct for which he was convicted. (Doc. No. 10-14, <u>Chatman v. State</u>, 2018 ND 77, ¶¶ 7-9). Their factual determinations are presumptively correct. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Buchheit v. Norris</u>, 459 F.3d 849, 852 (8th Cir. 2006); <u>Perry v. Kemna</u>, 356 F.3d 880, 883 (8th Cir. 2004). Chatman's fifth claim is therefore dismissed.

### 6.    Claim Re <u>Brady</u> Violation

 Chatman's sixth ground for relief pertains to the prosecution's alleged withholding of evidence in violation of <u>Brady</u>. Chatman asserts that he was not provided with ex parte communications between the prosecution and law enforcement regarding Giles/Nobles true identity until after the trial had concluded and that these communications would have cast doubt upon the veracity of Giles/Nobles.

A <u>Brady</u> violation occurs when the prosecution withholds evidence favorable to an accused upon request, "irrespective of the good or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87, 83 There are three components of a <u>Brady</u> violation: (1) the evidence at issue must be favorable to the accused, which means it is either exculpatory or impeaching, (2) the evidence must have been willfully or inadvertently suppressed by the prosecution, and (3) the accused must have been prejudiced as a result. <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999). Evidence is material, i.e., prejudicial, "if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of J. Blackmun); id. at 685 (White, J., concurring in part and concurring in the judgment).  The materiality of the evidence withheld is considered "collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436 (1995).

Here, Chatman has failed to establish that the material allegedly withheld by the prosecution was material.  Given that information provided to Nobles/Giles about Chatman's travels appears to have been accurate and given all of the evidence presented by the prosecution, such as the controlled substances found in the vehicle in which Chatman was traveling and his admissions to the law enforcement, the likelihood of Giles/Nobles identity issues having an appreciable impact on the outcome at trial appears to be beyond remote. Chatman's Brady claim is therefore dismissed. Claim

### 7.    Claim Re Giglio Violation

Finally, in his seventh ground for relief, Chatman accuses the prosecution and Detective Bolme of misleading the jury, perjury, and/or subornation of perjury in an attempt to conceal Giles's true identity and lack of credibility in violation of Giglio.   Specifically, he asserts:

> State's Attorney Dawn Dietz and Detective Bolme misled the court and the jury when prosecutor Dawn Dietz allowed Detective Bolme to testify that the information name was Ashley Giles . . . when the informant real name was Jyssica Noble. Prosecutor Dawn Dietz and Detective Bolme knowingly and intentionally, or with the reckless disregard for the truth that informant Jyssica Noble lied to Detective Bolme by giving him Ashley Giles North Dakota State I.d., committing identity fraud . . . . Because Ashley Giles is in the database for traffic tickets in which a picture of her exists . . . Mike Bolme, a police officer over 17 yrs of experience, did not investigate into who he was dealing with? Chatman alleged prosecutorial misconduct due to the false and misleading testimony of Detective Bolme committing false testimony during Chatman's jury trial, by given false testimony of the informant name was Ashley Giles.  The due process clause of Fourteen Amendment forbids the knowing use by the State of perjury testimony.  Given the overwhelming evidence of Detective Bolme fabrication of evidence in this case, his evasive answers during examination, and his inability to provide any plausible explanation for his actions.  It is illogical to conclude that any of Detective Bolme

testimony was credible . . . .

State Attorney Dawn Dietz and Detective Bolme manufactured a plan to employ Jyssica Noble identity fraud for Ashley Giles and deploy that name in the service of the prosecution both before and during trial to further the State goal of a conviction. The expectation was to proceed with a plan without the knowledge of the defense and without the knowledge or consent of the Court.  By that means, the State Attorney Dawn Dietz could secure for the prosecution the presumed benefit of a conviction of Chatman, while avoiding any presumably unnecessary and bothersome entanglements with facts impinged the credibility of her informant.

(Doc. No. 1, pp. 30-31) (errors in original).

Respondent asserts that this claim fails for the following reasons.  First, Chatman has presented nothing to substantiate his claim of misconduct by the prosecution or the law enforcement officers who testified at trial.  Second, Chatman has presented nothing to suggest that the issue regarding Giles'/Noble's identity would have had any impact on the trial, particularly in light of his admission to the offense conduct and  the narcotics found in his vehicle.

A <u>Giglio</u> violation occurs when the prosecution solicits or fails to correct false or perjured testimony and "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury." <u>Giglio</u>, 405 U.S. at 153–54, (quoting <u>Naupe v. Illinois</u>, 360 U.S. 264, 271 (1959)) (ellipses in original). The State violates <u>Giglio</u> if it "includes perjured testimony and ... the prosecution knew, or should have known, of the perjury." <u>United States v. Agars</u>, 427 U.S. 97, 103, (1976). Thus, to succeed on a <u>Giglio</u> claim, a petitioner must prove (1) that the prosecution used or failed to correct testimony that he knew or should have known was false and (2) materiality—that there is any reasonable likelihood the false testimony could have affected the judgment.

When considering a <u>Giglio</u> claim on federal habeas review, a petitioner must also satisfy the standard set forth in <u>Bricht v. Abrahamson</u>, 507 U.S. 619 (1993). Specifically, a petitioner must demonstrate that the <u>Giglio</u> violation "had substantial and injurious effect or influence in

determining the jury's verdict." Id. at 637 (internal quotation marks omitted).

Here, Chatman's assertions regarding misconduct by the prosecution and law enforcement are at best questionable. In any event, he has not demonstrated a reasonable likelihood that this alleged misconduct could have affected the ultimate outcome at trial. If Giles/Nobles had misrepresented her identity to law enforcement, if the prosecution and law enforcement knew or should have known that she misrepresented her identity, and if they had testified to this, it seems extremely unlikely that the scales would have been tipped in Chatman's favor, as they jury also had before it physical evidence, Chatman's admissions, and substantive information provided by Giles/Nobles that appears, with the benefit of hindsight, to have been very accurate. Chatman's Giglio claim is therefore denied.

## III.   CONCLUSION

Respondent's Motion to Dismiss Section 2254 Petition (Doc. No. 5) is **GRANTED**. Chatman's habeas petition (Doc. No. 1) is **DENIED**.

## IV.   CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a certificate of apealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockerel, 537 U.S. 322, 338 (2003) (quoting Slack v. McDonnell, 529 U.S. 473, 484 (2000)); see also, United States v. Hambros, 404 F.3d 1034, 1036–37 (8th Circ. 2005); Garrett v. United States, 211 F.3d 1075, 1076–77 (8th Cir. 2000). When the court denies a petitioner's claim on procedural grounds without reaching the merits, the petitioner must

31

demonstrate that reasonable jurists would find it debatable that a valid claim for the denial of constitutional rights has been stated and that the district court was correct in its procedural ruling. <u>Slack</u>, 529 U.S. at 484.

In this case, reasonable jurists would not find the dismissal of Chatman's petition to be debatable.  Consequently, the court will not issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated this 13th day of September, 2022.

<u>*/s/ Clare R. Hochhlater*　　　　</u>
Clare R. Hochhalter, Magistrate Judge
United States District Court
